**RODGERS v. STURGIS NAT. BANK.**

(Court of Civil Appeals of Texas. Austin. Jan. 8, 1913. Rehearing Denied Jan. 29, 1913.)

1. CHATTEL MORTGAGES (§ 227*) — MANAGEMENT OF PROPERTY BY MORTGAGOR—REIMBURSEMENT FOR EXPENSES.

A chattel mortgagor may not deduct from the proceeds of a sale of the mortgaged chattels the expenses incurred by him in the management and keeping of the chattels, and thereby reimburse himself for the expenses.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 476; Dec. Dig. § 227.*]

2. EXECUTORS AND ADMINISTRATORS (§ 261*) —CLAIMS—PRIORITIES — STATUTORY PROVISIONS.

Sayles' Ann. Civ. St. 1897, arts. 2091–2093, 2096, giving priority to expenses of administrators and expenses incurred in the preservation and management of the estate over other claims, except funeral expenses and expenses of last sickness and allowance made to the widow and children, adopt the rule of equity that the necessary expenses of administering a trust

have priority over the claims of the beneficiary, but do not authorize an administrator to use the proceeds of mortgaged chattels to cover the expenses in managing the same, where unincumbered assets are sufficient therefor, though the estate is insolvent.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 944–974; Dec. Dig. § 261.*]

3. EXECUTORS AND ADMINISTRATORS (§ 416*) —CLAIMS—PRIORITIES.

As between secured and unsecured creditors of a decedent's estate, the expenses incurred in the management of the estate must be paid out of the unincumbered assets, though the estate is insolvent.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1652–1654; Dec. Dig. § 416.*]

4. EXECUTORS AND ADMINISTRATORS (§ 261*)— MANAGEMENT OF ESTATE—"COURT COSTS."

Compensation to an administrator for the care and management of mortgaged chattels of the estate is not "court costs" within the rule that court costs are entitled to priority over the claim of a creditor.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 944–974; Dec. Dig. § 261.*

For other definitions, see Words and Phrases, vol. 2, p. 1682.]

5. EXECUTORS AND ADMINISTRATORS (§ 261*)— MANAGEMENT OF ESTATE—COURT COSTS.

In the administration of a decedent's estate, court costs are allowed priority over secured creditors only where the administrator entitled to the costs does not have in his possession other sufficient unincumbered assets to pay the costs.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 944–974; Dec. Dig. § 261.*]

Appeal from District Court, Hill County; C. M. Smithdeal, Judge.

Action by the Sturgis National Bank against Mrs. Susan A. Rodgers, administratrix of Edmund Rodgers, deceased. From a judgment granting relief, defendant appeals. Affirmed.

H. G. Hart and R. M. Vaughan, both of Hillsboro, for appellant. Wear & Frazier, of Hillsboro, for appellee.

KEY, C. J. This case is presented in this court upon an agreed statement of the pleadings and the facts. The first paragraph of the agreement relates to the pleadings, and the remainder is as follows:

"Second. The following facts were proven: That on January 30, 1910, Edmund Rodgers, now deceased, executed his five certain promissory notes of that date, payable to the Sturgis National Bank or order, as follows: First note for $500, due April 1, 1909, with interest at the rate of 10 per cent. per annum from date; second for $1,000, due May 1, 1909, with interest at the rate of 10 per cent. per annum from date; third for $2,000, due October 1, 1909, with interest at the rate of 10 per cent. per annum from date; fourth for $1,000, due August 1, 1909, with interest at the rate of 10 per cent. per annum from

date; and the fifth for $3,000, due November 1, 1909, with interest at the rate of 10 per cent. per annum from date; and on the 30th day of January, 1909, executed his certain chattel mortgage to Eldred McKinnon, as trustee, conveying to him in trust the following cattle: One hundred and fifty (150) head of registered shorthorned Durham cattle, number with metal ear marks, running from one to 295, inclusive, and their increase, to secure the payment of the above-described notes; that on November 25, 1910, said herd of registered shorthorned Durham cattle numbered 242, and were sold by Mrs. Susan A. Rodgers, administratrix of said estate, under proper order of the county court of Hill county, Texas, for the sum of $6,547.30; that said notes above described and the lien securing the payment of same on said herd of cattle was duly established and allowed as a third-class claim against the estate of the said Edmund Rodgers, deceased, January 20, 1910, for the sum of $9,285.82, and secured by lien on said herd of cattle.

"That said administratrix on the 5th day of December, A. D. 1910, had paid to said Sturgis National Bank on its said claim the sum of $4,535.07 out of said $6,547.30; that said administratrix after qualifying as administratrix of the estate of Edmund Rodgers, deceased, to wit, September 16, 1909, to October 6, 1910, incurred in the care, management and keeping of said herd of registered cattle, including feedstuffs and marketing said herd of cattle, as necessary expenses, the sum of $2,012.23; that she deducted said sum of $2,012.23, expense so incurred by her, from said sum of $6,547.30, paying said sum as expense so incurred out of said sum of $6,547.30; that the indebtedness against said estate duly established, exclusive of interest, amounts in the aggregate to $24,186.44; that of this sum $19,075.22 represents the total sum of secured claims, and $5,111.22 represents the total sum of unsettled claims; that said estate is insolvent, and will not pay more than 75 per cent. of the indebtedness against same; that the costs incurred and to be incurred in the administration of said estate will amount to about $4,500; that there is sufficient unincumbered property of the estate, subject to the payment of expenses, to meet the probable expenses of administration.

"Third. That said motion of the Sturgis National Bank was filed in the estate of Edmund Rodgers, deceased, in the county court, and an appeal prosecuted to the district court from an order entered by said county court on said motion.

"Fourth. The following issues of law are involved in this case: (1) Whether or not the necessary expense incurred in the care, management, and keeping of said herd of registered cattle, including feedstuffs and marketing said herd of cattle, said expense

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

amounting in the aggregate to $2,012.23, should be paid out of the gross proceeds arising from the sale of said cattle; or (2) whether or not said expense should be paid out of the general funds of the estate, said estate being insolvent, and the Sturgis National Bank to receive the entire sum received by the administratrix for said herd of cattle; or (3) whether or not the Sturgis National Bank should only receive the sum of $4,535.-07, being the sum left after deducting from said sum of $6,457.30 the sum of $2,012.23, the aggregate amount of the several items of expense incurred by said administratrix on account of said herd of cattle as above stated, and the balance due on said bank's claim established as third class, to share in the distribution of the balance of the funds of said estate as a fourth-class claim, said estate being insolvent.

"Fifth. We agree that the transcript of the record in this case shall only contain (1) this agreement, (2) judgment, (3) motion for new trial, (4) order overruling motion for new trial, (5) assignment of errors, which shall constitute the record of this cause on appeal.

"We agree that this case on appeal may be decided upon this agreed statement, in accordance with the provisions of the statute, and determined accordingly. This the 8th day of November, A. D. 1911."

Opinion.

[1] If Edmund Rodgers was alive and the contest was between him and the appellee, it is quite clear that the courts would not sustain the contention that the expenses incurred in the care, management, and keeping of the mortgaged property should be deducted from the proceeds thereof, and the remainder only applied upon the debt secured by the mortgage; and if a different result follows on account of the death of Edmund Rodgers, and the fact that his estate is in course of administration, appellant should be able to point to some statutory enactment which will support that contention.

[2] In order to meet that demand, counsel for appellant have cited the following articles in Sayles' Revised Civil Statutes:

"Art. 2091. The claims against an estate shall be classed and have priority of payment as follows: (1) Funeral expenses and expenses of last sickness. (2) Expenses of administration and the expenses incurred in the preservation, safe-keeping and management of the estate. (3) Claims secured by mortgage or other liens so far as the same can be paid out of the proceeds of the property subject to such mortgage or other lien, and when more than one mortgage or lien shall exist upon the same property, the oldest shall be paid first; but no preference shall be given to such claims secured by mortgage or lien further than regards the property subject to such mortgage or other

lien. (4) All claims legally exhibited within one year after the original grant of letters testamentary or of administration. (5) All claims legally exhibited after the lapse of one year from the original grant of letters testamentary or of administration.

"Art. 2092. When there is a deficiency of assets to pay all claims of the same class, they shall be paid pro rata, and no executor or administrator shall be allowed to pay any claims whether the estate is solvent or insolvent, except with their pro rata amount of the funds of the estate that have come to hand.

"Art. 2093. Executors and administrators, whenever they have funds in their hands belonging to the estate they represent, shall pay: (1) Funeral expenses and expenses of last sickness, if the claims therefor have been presented within sixty days from the original grant of letters testamentary or of administration, but if not presented within such time, their payment shall be postponed until the allowances made to the widow and children or either, are paid. (2) Allowances made to the widow and children or either. (3) Expenses of administration and the expenses incurred in the preservation, safe-keeping and management of the estate. (4) Other claims against the estate in the order of their classification."

"Art. 2096. Whenever any executor, or administrator shall have in his hands the proceeds of a sale that has been made for the satisfaction of a mortgage or other lien, and such proceeds or any part thereof are not required for the payment of any debts against the estate that have a preference over such mortgage or other lien, it shall be the duty of such executor or administrator, within twelve months after the grant of letters testamentary or of administration, to pay over such proceeds, or so much thereof as may not be required for the payment of any debts against the estate that have a preference over such mortgage or other lien, to the creditor or creditors having a right thereto; and if any executor or administrator shall fail to do so, such creditor or creditors, upon proof thereof, may obtain an order from the county court, in like manner as is provided in the preceding article, directing such payment to be made."

It is urged on behalf of appellant that these statutory provisions, when construed together, and especially the second subdivision of article 2091 and the third subdivision of article 2093, support appellant's contention that she had the right to retain such portion of the proceeds of the mortgaged property as was necessary to cover the expense of its care and management while in her possession as administratrix of the estate. It is true that these subdivisions of the article referred to do give priority to expenses of administration and expenses incurred in the preservation, safe-keeping, and

management of the estate over all other claims, except funeral expenses, expenses of last sickness, and allowances made to the widow and children; but it does not follow from this that, if there are other unincumbered assets of the estate in the possession of the administrator, sufficient to pay all such preferred claims, the administrator has the right to apply the proceeds of mortgaged property to the payment of such claims, and thereby diminish the security of the lien creditor. If appellant's contention is correct, it would seem that she had the right to retain from appellee, the lien creditor, not only the sum that was necessary to cover the expense of keeping and managing the mortgaged property, but all other expenses of a similar nature as to the entire estate, and also the expenses of administration, because the statute relied on in express terms gives a preference to all the expenses referred to. In our opinion such construction is unsound. We think it was the purpose of subdivision 2 of article 2091, and subdivision 3 of article 2093, to incorporate into the statute the well-known rule of equity to the effect that the necessary expenses of administering a trust have priority over the claims of the beneficiary in the trust, but that the statute should not be so construed as to authorize an administrator to use the proceeds of mortgaged property to cover the expenses referred to, when he has other funds in his hands, or other unincumbered assets sufficient to cover all such expenses. If the unincumbered assets are not sufficient to meet the expenses of administration, preservation, etc., then, by force of the statutory provisions referred to, as well as the rule of equity upon which it is founded, the administrator has the right to use the proceeds of mortgaged property to supply the deficiency. But when no such contingency exists, and when as, in the case at bar, the unincumbered assets are sufficient to cover all the expenses referred to, the administrator has no right to use mortgaged property to cover such expenses. No case has been cited, and we have found none, analogous to the instant case. Counsel for appellant have cited Robertson v. Paul, 16 Tex. 472, Williams v. Robinson, 56 Tex. 347, and Greer Mills & Co. v. Estate of Riley, 92 Tex. 699, 53 S. W. 578, but the particular question here presented was not involved nor decided in either of those cases.

[3] While the unsecured creditors may not be parties to this proceeding otherwise than as they are represented by the administratrix, they are the parties adversely interested, and the question is, As between the secured and unsecured creditors, must expenses of administration, preservation, and man-agement be paid out of the unincumbered assets, or have the unsecured creditors the right to insist that any portion of such expenses should be paid out of the mortgaged property, when it is insufficient to pay the mortgage debt? The policy of the law is to encourage the diligent creditor; and, if he obtains security for his debt, he is entitled to the full benefit of that security unless, by force of some law existing at the time the lien is secured, some other creditor has a prior right. As before said, if Rodgers had not died, and had retained possession of the mortgaged property until it was sold under the mortgage, he would have had no right to any portion of the proceeds for the purpose of reimbursing himself for care and preservation of the property, and we do not believe that it was the intention of the Legislature, in enacting the statute quoted, to confer upon the unsecured creditors a greater right in that respect than the debtor himself had.

[4] It may be conceded, as a general rule, that court costs are entitled to priority over the claim of the creditor, but that is not the question involved in this case. Of the proceeds of the mortgaged property the appellant retained $2,012.23 as compensation for the "care, management, and keeping of said herd of registered cattle, including feedstuffs and marketing said herd of cattle," as necessary expenses from the time she qualified as administratrix in September, 1909, until she sold the cattle in October, 1910. This was not court costs, as that term is generally used.

[5] Besides, in cases where court costs are allowed priority, the person entitled to such costs does not have in his possession other sufficient unincumbered funds or assets, as the appellant in this case has. If the courts should sustain appellant's contention, the result would be that the secured creditor would be deprived of $2,012.23 of the proceeds of the mortgaged property, and the funds available for unsecured creditors would be increased that much. So it is not a question of whether the administratrix shall receive what she is entitled to, but the question is whether, as between the secured and unsecured creditors, a claim which has priority over both shall be paid out of the proceeds of the mortgaged property, or out of assets upon which no creditor has any lien. As before said, we think that question must be decided in favor of the secured and against the unsecured creditor.

Hence we hold that the trial court rendered the proper judgment, and that judgment is affirmed.

Affirmed.